798 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mowafak & Nidhal KORKIS, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 85-3174.
 United States Court of Appeals,
Sixth Circuit.
 July 17, 1986.
 
 Before KEITH and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Mowafak and Nidhal Korkis petition from an order of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge denying their applications for withholding of deportation and asylum. Before this Court, the Korkises contend that the BIA erred in denying their petitions for withholding of deportation and asylum. After considering the briefs and arguments presented, we affirm.
 
 
 2
 Mowafak, a citizen of Iraq, first came to the United States in 1977 while on vacation. Upon his return to Iraq, Mowafak alleges that he was imprisoned and tortured for speaking out against the government. Approximately two years later, in June 1979, Mowafak, his wife, and two children entered the United States as non-immigrant visitors for pleasure. The Korkises, who practice the Catholic religion, were granted asylum in May 1980 based upon the view of the State Department that Iraqi Christians were subject to the persecution as a class in Iraq. One year later, the Korkises applied to have their status changed to permanent residents. Shortly thereafter, however, the District Director informed the Korkises that their asylum status was to be rescinded because the State Department had reconsidered its earlier position and concluded that Iraqi Christians were not subject to persecution as a class.
 
 
 3
 A hearing was subsequently held before an Immigration Judge to determine the Korkises deportability. The Korkises petitioned the Immigration Judge to withhold their deportation or grant them asylum based on Mowafak's allegations in his application for asylum and various newpaper and other articles detailing the conditions in Iraq. In his asylum application, Mowafak asserted that both his father and brother had been imprisoned for their political opinions in 1971 and 1973, repsectively, that members of his religion, Catholic Christian, were a minority religion in Iraq and were subject to persecution, and that his brother had advised him not to return to Iraq. In, addition, both in his application for deportation and upon cross-examination Mowafak disclosed that, due to his Catholic religion, he had to bribe the Iraqi authorities to obtain his passport. In contrast, evidence was adduced that Mowafak received a free college education and had been employed in Iraq as an accountant for eleven years, Further, Mowafak failed to testify concerning any specific anti-government activities he engaged in after his 1977 arrest. The immigration Judge considered the foregoing evidence and concluded that Mowafak failed to present sufficient facts to support his claims for asylum and withholding of deportation.
 
 
 4
 The Attorney General is required to withhold an alien's deportation if "such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1253(h)(1) (1982). To meet this standard, the alien must establish a "clear probability of persecution" on account of one of the five designated reasons. INS v. Stevic, 467 U.S. 407 (1984) . On the other hand, the Attorney General in his discretion may grant an alien asylum in the United States if the alien establishes a "well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1153(a), 1101(a) (42) (A) (1962). For the purposes of this appeal, we assume that the well-founded fear of persecution standard is more generous than the "clear probability standard" and may be established by credible subjective evidence. Dolores v. INS, 772 F.2d 223, 226 (6th Cir.1985) (per curiam) Youkhanna v. INS, 749 F.2d 360, 362 (6th Cir.1984). Nevertheless, the burden is still upon the alien to present specific facts demonstrating that he "personally would be singled out for persecution." Dally v. INS, 744 F.2d 1191, 1193 (6th Cir.1984); accord Nasser v. INS, 744 F.2d 542, 545 (6th Cir.1984). We believe that the Korkises have failed to adequately support their petition for asylum under these standards.
 
 
 5
 Initially, the arrests of Mowafak's father and brother are undisputedly specific instances of prior policital persecution. The significance of these arrests, however, is seriously diminished since they occurred over ten years ago and since Mowafak produced no evidence indicating that either his father or brother have been subjected to any persecution since their imprisonment. Cf. Nasser, 744 F.2d at 545. Moreover, Mowafak's own actions belie the significance of these events since he did not consider these events sufficiently compelling to seek asylum when he visited the United States in 1977. Similarly, although Mowafak's arrest in 1977 for criticizing the Iraqi government supports his claim of persecution, Mowafak has not corroborated or shown in any manner that such actions are likely to occur again if he returns to Iraq. See Youkhanna, 749 F.2d at 362. In fact, the evidence shows that the Iraqi government paid for Mowafak's education and that Mowafak failed to adduce any evidence that he was persecuted or participated in any anti-government actions after the 1977 arrest. See Youkhanna, 749 F.2d at 362; Cf. Nasser, 744 F.2d at 545. Turning to Mowafak's allegations concerning the persecution of Christians in Iraq, including the passport bribing incident, and the newspaper and other articles introduced before the Immigration Judge, we are forced to discount these allegations and documents because this evidence does not relate specifically to the possible future persecution of Mowafak as an individual; rather, it relates to persecution in general in Iraq. Cf. Dolores, 772 F.2d at 226. Accordingly, we conclude that the record lacking any credible subjective testimony or other specific instances of persecution tending to make it more likely than not that Mowafak will be persecuted upon his return to Iraq Mowafak has failed to establish his claim for asylum.
 
 
 6
 Since the Korkises have failed to establish even a well founded fear of persecution, it follows that their claim for withholding of deportation under the more exacting clear probability standard must also fail.
 
 
 7
 For the foreging reasons, the petition for review is denied.